LEIGH M. CLARK, Retired Circuit Judge.
A jury found defendant-appellant guilty under an indictment for theft of property in the second degree that alleged:
“Johnny Lee Dozier ... did knowingly obtain or exert unauthorized control over one camera, the property of James Bol-den, of the value of, to-wit: $300.00, with the intent to deprive the owner of said property, in violation of 13A-8-4 of the Code of Alabama.”
James David Bolden testified that when he went to work about 7:00 A.M. on November 27,1982, he left his camera described in the indictment, valued at “around $250.00,” in the right front seat of his automobile and locked his automobile. He put the car keys on his desk. As he returned to his automobile at about 11:30, the car was still locked but the camera was missing. The defendant was a coworker of Bolden, whom Bolden testified he saw at their place of work on November 27, 1982.
Rhonda Hoover testified that she worked at the same place as James David Bolden and Johny Lee Dozier on November 27, 1982, that about 10:00 that morning she drove into the parking area, where she saw Bolden’s automobile. She testified that at that time she saw the defendant “at the car” and that he “had a car door open and he was standing between the car door and the front seat of the car,” that “the car door was open and his back was to the car door.”
Most of the other evidence as to who took the camera from the automobile and as to where it was taken is thereafter not as definite as it should have been and as it probably would have been if questions and answers had been more carefully worded, particularly as to the identity of the antecedents of some personal pronouns. However, it is reasonably clear from the testimony of Bolden that on the afternoon of the date of the disappearance of his camera from his automobile there was a telephone conversation between him and the defendant, that on the following day there was another telephone conversation between them and that in one of said telephone conversations defendant told Bolden that one Greg Floyd had the camera. A part of Bolden’s testimony as to the telephone conversation was as follows:
“Q. Do you know Greg Floyd?
“A. I have seen him. I don’t know him personally, no, sir. But, he told me he had the camera and that it was going to *989 take seventy dollars to get the camera back.
“Q. All right.
“A. And, he said I have fifty dollars of my own money and said I have talked to my mother and as soon as the bank opens Monday morning, I will get the other twenty dollars and we will go get your camera back. And, I told him okay, that is fine. You know, as long as I have the camera back Monday morning, I won’t press charges.
“Q. Did you have a conversation with him later?
“A. Yes, sir. I had another conversation. Basically the same kind conversation on the following day. He called me again and wanted to know would I take him to the pawn shop in Dothan to get the camera Monday morning. And, I told him no, I wouldn’t. It wasn’t my responsibility, you know, to take him to the pawn shop. And, he said that is where it is, the camera is at the pawn shop in Dothan.
“Q. But, he offered his own money, fifty dollars of it, to go get it?
“A. Right. And, I also asked him if he didn’t have anything to do with it, why was he going to pay for it. And, he said to keep from going to jail. Then I stated that I wouldn’t press charges against him, if he didn’t have anything to do with it.”
Officer Neal Forrester of the Police Department of Headland, testified that in investigating the reported theft, he talked with the defendant, and after explaining to him his rights, he learned from the defendant the following:
“I talked with Johnny Lee Dozier on the 29th of November of 1982, and asked him about a camera that was supposedly taken out of a vehicle belonging to James David Bolden that works at Wex Tex. Mr. Dozier advised me he did not take the camera. That he thought that Greg Floyd took the camera. And, that Johny was trying to raise seventy dollars to buy the camera from Greg to give it back to Mr. Bolden.
“Q. Who is Greg Floyd? Do you know him?
“A. Yes, sir. He is a colored, Black male, colored male approximately in his 20s. He is mentally incompetent.
“Q. Did you discuss this with Greg Floyd?
“A. Yes, sir. I talked with Greg.”
At the conclusion of the evidence for the State, defendant moved for a judgment of acquittal on the ground that the State had not presented a prima facie case against defendant, which motion was overruled by the court, and the defendant then rested without calling any witnesses, other than his recall of James David Bolden and questioning him as to the value of the camera.
We agree with the trial court in its denial of defendant’s motion for an acquittal on the ground that “the State has failed to make a prima facie case against the Defendant.” Although the evidence of defendant’s guilt was entirely circumstantial, it constituted strong, substantial evidence of defendant’s guilt either as a principal or as an aider and abettor. Therefore, we disagree with appellant’s contention that the “verdict was contrary to the great weight of the evidence” and his contention that the “State failed to prove a prima facie case of theft in the second degree.”
Another contention of appellant for a reversal is predicated upon a ruling of the trial court overruling defendant’s objection to the testimony of Officer Neal For-rester, as quoted above, as to what Johnny Lee Dozier told Officer Forrester with reference to the disappearance of the camera from the vehicle belonging to Bolden. The ruling complained of was over an objection by defendant’s attorney as follows:
“MR. CRESPI: May it please the Court, I would like to renew my objection on the further ground that there is a pending Discovery Motion in this case for a discovery of statements. And, I don’t have one in my records, Your Honor. And, I object to its admissibility on that ground.
*990 “THE COURT: Okay. I overrule you.”
Appellant asserts that he was not furnished with a copy of the statement made by defendant to Officer Forrester or any information as to the substance of such statement, and relies upon Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to bolster his contention. The essence of that which was held in Brady v. Maryland to which appellant refers is the following at 373 U.S. 87, 83 S.Ct. 1196, 10 L.Ed.2d 218:
“We now hold that the suppression by the prosecution of evidence favorable to an accused [favorable to and upon request by an accused] violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. [Emphasis supplied].”
In the instant case, the evidence presented by the State was not favorable to defendant in its entirety. It was largely unfavorable and most certainly more unfavorable than favorable to defendant. It is obvious that the prosecution desired to use the evidence as evidence favorable to the prosecution and not favorable to the defendant. Brady v. Maryland is inapposite to such a situation. Furthermore, as shown by the objection by defendant’s attorney to the proffered evidence as to what defendant had told Officer Forrester, the “Discovery Motion” was still pending and evidently had not been brought to the attention of the court by the movant at such a time or in such a way as to then and there invoke a ruling of the court on the motion. In our opinion, the trial court committed no error prejudicial to defendant in overruling defendant’s objection to the testimony of Officer Forrester in relating what defendant had told him as to what he knew about the disappearance of the camera from the vehicle of Bolden.
By the only other contention for a reversal, appellant argues that he was denied his constitutional right to a speedy trial. It is clear that defendant through his attorney gave definite written notice on April 21, 1983, of his desire for a speedy trial by a “Motion for Speedy Trial or to Dismiss.” This motion was filed one day after the case had been continued on motion of the State from its setting on April 18, 1983. The setting of the case for trial on April 18, 1983, was only ten days after the arraignment, at which defendant entered a plea of not guilty. On May 20, 1983, the court denied defendant’s motion to dismiss and set the case “for trial at next term.” The case came on for trial on November 8, 1983. Four days before November 8, defendant filed another motion to dismiss, contending that he had been denied his constitutional right to a speedy trial, which motion to dismiss was denied by the trial court.
There is no insistence by appellant that the trial court did not have a valid basis for continuing the case at the instance of the State on April 20, 1983. He makes no claim to the effect that taking all the circumstances into consideration, the case should have been set for trial before November 8,1983. He makes no argument to the effect that the intervening time between the first setting and the second setting of the case was inordinate.
Our consideration of the four factors set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), leads to the conclusion that in one of them only, namely, defendant’s assertion of his right, did appellant tend to show his right to a speedy trial had been violated. As to another factor, namely, the reasons for the delay, we are not aided by the record proper, the court reporter’s transcript, or otherwise. As to another factor, to-wit, prejudice to the defendant, there is an utter absence of any showing of any prejudice whatever to defendant by his not having been tried sooner. As to the remaining factor, the length of the delay, we are convinced that the length of the delay was not unreasonable. It fell short of being so long as to be “presumptively prejudicial or patently offensive.” In that circumstance, the contention that there was a violation of defendant’s constitutional right to a speedy trial is refuted, even if all of the other *991 three factors were favorable to appellant’s contention. Byrd v. State, AIa.Cr.App., 421 So.2d 1344, 1346 (1982), by Judge Bowen, now Presiding Judge, cert. denied, Ala., 421 So.2d 1344. It necessarily follows that the claim of a denial of defendant’s constitutional right to a speedy trial is overcome when only one factor, the assertion of the right, is favorable to appellant.
Our consideration of all of the issues raised by appellant leads to the conclusion that the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.